IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG 17 2009

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

AEROTECH HOLDINGS, INC., §
ET AL., §
                                §
        Plaintiffs,             §
                                §
VS.                             §   NO. 4:09-CV-252-A
                                §
ALLIANCE AEROSPACE             §
ENGINEERING, LLC, ET AL.,      §
                                §
        Defendants.             §

MEMORANDUM OPINION
and
ORDER

Came on now for consideration the motion of defendants,

Alliance Aerospace Engineering, LLC ("Alliance"), JCM Engineering

Corporation ("JCM"), United Aerospace Engineering, LLC

("United"), Carlo Moyano ("Moyano"), Bruce Killian ("Killian"),

and Thomas Blaser ("Blaser"), to dismiss the above-captioned

action for lack of personal jurisdiction.  Having considered

defendants' motion, the response of plaintiffs, Aerotech

Holdings, Inc., and Aerotech Engineering, Inc. (collectively,

"Aerotech"), defendants' reply, plaintiffs' supplemental appendix

and defendants' response thereto, and the applicable authorities,

the court concludes that defendants' motion should be granted in

part and denied in part for the reasons stated herein.

I.

Plaintiffs' Claims

Plaintiffs bring claims against all defendants for

misappropriation of trade secrets; conversion; unfair competition

by misappropriation and palming off; injury to business reputation, trade name, or mark; trade dress infringement; civil conspiracy; and tortious interference with existing and potential business relations. Plaintiffs also bring a claim of breach of fiduciary duty and duty of loyalty against defendants Killian and Blaser, and claims of fraud and negligent misrepresentation against Killian. Defendants seemingly argue that plaintiffs' claims relate to two different groups of forum contacts, and have categorized plaintiffs' claims as either "confidential information claims" or "infringement claims." The court adopts these categories for convenience.

II.

### Applicable Burdens of Pleading and Proof Legal Standards

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that in personam jurisdiction exists. Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994); Stuart v. Spademan, 772 F.2d 1185, 1192 (5th Cir. 1985); D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc., 754 F.2d 542, 545-46 (5th Cir. 1985). The plaintiff need not, however, establish personal jurisdiction by a preponderance of the evidence; at this stage,[1] prima facie evidence of personal jurisdiction is sufficient. WNS, Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989); Wyatt v. Kaplan, 686 F.2d 276, 280 (5th Cir. 1982). The court may resolve

---

[1] Eventually, plaintiff must prove by a preponderance of the evidence that jurisdiction exists. See DeMelo v. Toche Marine, Inc., 711 F.2d 1260, 1271 n.12 (5th Cir. 1983).

a jurisdictional issue by reviewing pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof. <u>Command-Aire Corp. v. Ontario Mech. Sales & Serv., Inc.</u>, 963 F.2d 90, 95 (5th Cir. 1992). Allegations of the plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits. <u>Wyatt</u>, 686 F.2d at 282-83 n.13 (citing <u>Black v. Acme Markets, Inc.</u>, 564 F.2d 681, 683 n.3 (5th Cir. 1977)). The court resolves any conflicts in the evidence, and all reasonable inferences therefrom, in favor of the plaintiff. <u>Flech v. Transportes Lar-Mex SA DE CV</u>, 92 F.3d 320, 327 (5th Cir. 1996).[2]

Personal jurisdiction over a nonresident defendant may be exercised if (1) the nonresident defendant is amenable to service of process under the law of a forum state, and (2) the exercise of jurisdiction under state law comports with the due process clause of the Fifth Amendment.[3] <u>Wilson</u>, 20 F.3d at 646-47; <u>Thompson v. Chrysler Motors Corp.</u>, 755 F.2d 1162, 1166 (5th Cir.

---

[2]The court disapproves of the technique employed by both parties in their filings of making assertions supposedly supported by the record when in fact, the record contains no such support. The court admonishes both parties that continuation of this practice may result in sanctions as contemplated by Rule 11 of the Federal Rules of Civil Procedure.

[3]The same minimum contacts test applies under both the Fifth and Fourteenth Amendments where there is no federal statute authorizing nationwide service of process. Point Landing, Inc. v. Omni Capital Int'l, Ltd., 795 F.2d 415, 427 (5th Cir. 1986), aff'd, 484 U.S. 97 (1987) ("absent specific congressional authority, a federal district court has no personal jurisdiction over a defendant who cannot be reached by the long-arm statute of the state in which the district court sits"); Max Daetwyler Corp. v. R. Meyer, 762 F.2d 290, 293 (3d Cir. 1985); Whistler Corp. v. Solar Elec., Inc., 684 F. Supp. 1126, 1128-29 (D. Mass. 1988). Accordingly, the court cites to Fourteenth Amendment cases herein as appropriate.

1985) (quoting <u>Smith v. DeWalt Prods. Corp.</u>, 743 F.2d 277, 278 (5th Cir. 1984)). Since the Texas long-arm statute has been interpreted as extending to the limits of due process,[4] the only inquiry is whether the exercise of jurisdiction over the nonresident defendant would be constitutionally permissible. <u>Bullion v. Gillespie</u>, 895 F.2d 213, 216 (5th Cir. 1990); <u>Stuart</u>, 772 F.2d at 1189.

For due process to be satisfied, (1) the nonresident defendant must have "minimum contacts" with the forum state resulting from an affirmative act on the defendant's part, and (2) the contacts must be such that the exercise of jurisdiction over the person of the defendant does not offend "traditional notions of fair play and substantial justice." <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (quoting <u>Milliken v. Meyer</u>, 311 U.S. 457, 463 (1940)). Plaintiff "can remain in court only if there is some basis for finding personal jurisdiction over the . . . named defendant[]." <u>Id.</u>

The minimum contacts prong of the due process requirement can be satisfied by a finding of either "specific" or "general" jurisdiction over the nonresident defendant. <u>Bullion</u>, 895 F.2d at 216. A court has specific jurisdiction over a nonresident defendant where the plaintiff's claim "arises out of or relates to activities that the defendant purposefully directed at the

---

[4]See, e.g., Guardian Royal Exchange Assurance Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991); Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990); Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 200 (Tex. 1985).

forum state." <u>Mullins v. TestAmerica, Inc.</u>, 564 F.3d 386, 398 (5th Cir. 2009).   In the Fifth Circuit, a plaintiff must show that (1) each defendant has minimum contacts with the forum state, and (2) the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts.   <u>Nuovo Pignone, SpA v. STORMAN ASIA M/V</u>, 310 F.3d 374, 378 (5th Cir. 2002).

A defendant need not conduct an act physically in the forum state to be subject to jurisdiction in that state.   <u>See Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476 (1985).   Courts utilize the "effects" test set forth in <u>Calder v. Jones</u>, 465 U.S. 783 (1984), to determine whether a nonresident defendant's acts outside the forum state are such that the defendant should "reasonably anticipate being hauled into court there."   465 U.S. at 790.   As explained by the Fifth Circuit, "[w]hen a nonresident defendant commits . . . an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendants to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor . . . ."   <u>Guidry v. U.S. Tobacco Co.</u>, 188 F.3d 619, 628 (5th Cir. 1999) (internal citations omitted); <u>see also</u> <u>Calder</u>, 465 U.S. at 790.[5]   The effects of a tort do not

---

[5]While <u>Calder</u> was a libel action, the Fifth Circuit has extended its "effects test" outside of the realm of libel claims. <u>See</u> <u>Guidry v. U.S. Tobacco Co.</u>, 188 F.3d 619 (5th Cir. 1999); <u>Allred v. Moore & Peterson</u>, 117 F.3d 278 (5th Cir. 1997).

replace the need for minimum contacts, but instead are to be assessed as part of the minimum contacts analysis. <u>Panda Brandywine Corp. v. Potomac Elec. Power Co.</u>, 253 F.3d 865, 869 (5th Cir. 2001) (quoting <u>Allred v. Moore & Peterson</u>, 117 F.3d 278, 286 (5th Cir. 1997)). A plaintiff must also show conduct by the nonresident defendant that invoked the benefits and protections of the state or was otherwise purposefully directed towards a state resident. <u>Mullins</u>, 564 F.3d at 400.

Alternatively, under the stream-of-commerce theory, "[w]here a nonresident's contact with the forum state stems from a product, sold or manufactured by a [nonresident] defendant, which has caused harm in the forum state, the court has specific jurisdiction if it finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." <u>Nuovo Pignone, SpA</u>, 310 F.3d at 380 (quoting <u>Bearry v. Beech Aircraft Corp.</u>, 818 F.2d 370, 374 (5th Cir. 1987)). The Fifth Circuit has consistently held that "mere foreseeability or awareness" is sufficient to confer jurisdiction "if the defendant's product made its way into the forum state while still in the stream of commerce." <u>Luv 'N Care, Ltd. v. Insta-Mix, Inc.</u>, 438 F.3d 465, 470 (5th Cir. 2006).

The second prong of the due process analysis is whether exercise of jurisdiction over the nonresident defendant would comport with traditional notions of fair play and substantial justice. <u>International Shoe</u>, 326 U.S. at 316. In determining

whether the exercise of jurisdiction would be reasonable such that it does not offend traditional notions of fair play and substantial justice, the Supreme Court has instructed that courts look to the following factors: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) shared interest of the several states in furthering fundamental substantive social policies. <u>Asahi Metal Indus. Co. v. Superior Court</u>, 480 U.S. 102, 113 (1987) (citing <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 292 (1980)). If the plaintiff successfully shows that the defendant has minimum contacts with the forum state that relate to plaintiffs' claims, the burden shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable. <u>Seiferth v. Helicopteros Atuneros, Inc.</u>, 472 F.3d 266, 271 (5th Cir. 2006).

III.

<u>Analysis</u>

A.   <u>United</u>

   1.   <u>Confidential Information Claims</u>

   United has sufficient contacts with Texas that relate to plaintiffs' confidential information claims. Plaintiffs have shown that United, through Blaser, uses Aerotech's pricing information, confidential customer information, market research, and related information to target Aerotech's customers, including

7

Texas-based American Airlines and Continental Airlines.[6]  United has procured this confidential information through Blaser's retention of a laptop belonging to Aerotech.  Plaintiffs have shown that United has purposefully directed its conduct at Texas by using confidential information that belongs to a Texas company to target customers that are based in Texas.  See Miller Yacht Sales, Inc. v. Smith 384 F.3d 93, 97 (3d Cir. 2004).  It should be of no surprise to United that engaging in the alleged conduct would cause injury to Aerotech in Texas.  In light of these contacts, United should reasonably have anticipated being haled into court in Texas.

2.   Infringement Claims

United also has minimum contacts with Texas that arise out of plaintiffs' infringement claims.  Plaintiffs have shown that United sells Alliance parts bearing the extra "A" designation[7] to Texas-based airlines and other aircraft parts companies.  Plaintiffs have also shown that United has shipped parts with the extra "A" designation to Texas.[8]  United has a continuing obligation to sell parts with the extra "A" designation to a

---

[6]While Blaser's declaration denies using or taking any of Aerotech's proprietary information, it is clear from his declaration that Blaser is referring only to technical information pertaining to Aerotech's parts.

[7]By the term "extra 'A' designation," the court refers to the "AAE" designation Alliance places on its aircraft replacement parts.

[8]That United shipped parts to Texas f.o.b. California is relevant, but not dispositive, to the court's analysis.  See Luv 'N Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 471-72 (5th Cir. 2006) ("[An] F.O.B. term does not prevent a court from exercising personal jurisdiction over a non-resident defendant where other factors . . . suggest that jurisdiction is proper.").

Texas company in Texas, which United knows will sell the parts to
Texas-based Southwest Airlines.  These contacts clearly arise
from plaintiffs' infringement claims.

### 3.   Unfair or Unreasonable

Defendants have made no effort to show that jurisdiction
over any defendant would be unfair or unreasonable.  See
Seiferth, 472 F.3d at 271.  The court, having considered the
factors enumerated in Asahi, finds that exercising jurisdiction
over United does not offend traditional notions of fair play and
substantial justice.  480 U.S. at 113 (citing World-Wide
Volkswagen Corp., 444 U.S. at 292).  Defendants make no argument
as to United's burden of having to litigate this dispute in
Texas, and the court finds that the remaining relevant factors
overwhelmingly favor a Texas forum.

### B.   Alliance

### 1.   Confidential Information Claims

Alliance has sufficient minimum contacts with Texas that
arise out of plaintiffs' confidential information claims.
Defendants argue that plaintiffs lack jurisdiction over Alliance
with regards to their confidential information claims because
plaintiffs have not shown that the parts identified in the
declaration of Dominick DaCosta ("DaCosta") were ever sold to
Texas customers.  The court does not find this fatal to the
jurisdiction analysis.  Plaintiffs have shown that Killian formed
Alliance only three days after leaving Aerotech.  While he was
working for Aerotech, Killian was closely involved with the

9

designing of Aerotech's replacement parts and often traveled to Texas to work on the parts that are the subject of this action. The DaCosta declaration, along with plaintiffs' other evidence, shows that Alliance is selling parts, through United, that have been copied from Aerotech's confidential information, at least some of which was taken from Aerotech's facilities in Texas. Alliance aimed its conduct at Aerotech, a Texas resident, by copying Aerotech's designs and using information obtained from Aerotech's facilities in Texas. Plaintiffs' confidential claims arise from these contacts. In light of plaintiffs' evidence, it should have been significantly more than reasonably foreseeable that Alliance's alleged conduct would cause harm to Aerotech in Texas, and Alliance should reasonably have anticipated being haled into court in Texas.

2.    Infringement Claims

Alliance has sufficient minimum contacts with Texas that relate to plaintiffs' infringement claims. Plaintiffs have shown that Alliance, through United, has placed parts with the extra "A" designation into the stream of commerce, knowing that such parts would end up in Texas. See Luv 'N Care, Ltd., 438 F.3d at 470. Plaintiffs have shown that Alliance currently holds twenty-seven Parts Manufacturer Approvals with the Federal Aviation Administration for parts bearing the extra "A" designation. Alliance attended the MRO Convention in Texas and has, through United, sold parts with the extra "A" designation to Texas-based airlines and companies.

10

In addition to selling parts through United, plaintiffs have also shown that Alliance has contacted a Texas-based airline and has offered to sell the airline parts with an extra "A" designation that are currently provided to that airline by Aerotech.  Alliance, through Killian, also met with representatives of a Texas company multiple times in Texas and provided them with documents to facilitate the approval of Alliance's parts with Texas-based Southwest Airlines.  Alliance's invoices clearly show that its parts are shipped to Texas, and Alliance, through United, has a standing order with a Texas company for a monthly shipment of parts with the extra "A" designation to Texas.  These contacts clearly relate to plaintiffs' infringement claims.

> 3.   <u>Unfair or Unreasonable</u>

For the same reasons set forth in Part III.A.3, the court finds that exercising jurisdiction over Alliance does not offend traditional notions of fair play and substantial justice.

C.   <u>JCM</u>

The court has determined that plaintiffs have failed to show that JCM has sufficient minimum contacts with Texas so as to support specific jurisdiction.  While plaintiffs have shown that Killian has worked as an engineer for JCM, JCM has manufactured designs that have been copied from Aerotech, and JCM has manufactured parts bearing the extra "A" designation, plaintiffs have not shown that exercise by this court of jurisdiction over JCM is appropriate.

D.   Killian

1.   Confidential Information Claims

Killian has sufficient minimum contacts with Texas that relate to plaintiffs' confidential information claims.  While Killian denies retaining or using Aerotech's confidential information, plaintiffs have provided evidence to the contrary. Plaintiffs have shown that while working for Aerotech, Killian was in routine contact with the Texas office by telephone and e-mail, and he would come to the Texas facility at least two or three times a month.[9]  Killian would often work at the facility in Texas developing, redesigning, and improving the parts that are the subject of this action.  At least some of the misappropriated confidential information Killian is alleged to have taken from Aerotech was physically located in Texas.

Killian formed Alliance three days after terminating his employment with Aerotech, and plaintiffs have shown that at least some of Alliance's designs are copied from Aerotech's designs. Viewing the evidence and all reasonable inferences therefrom in a light most favorable to plaintiffs, the court is satisfied that Killian has sufficient contacts with Texas that arise from plaintiffs' confidential information claims.  The court is also satisfied that it is more than reasonably foreseeable that Killian would be haled into court in Texas for allegedly stealing

---

[9] A defendant cannot hide behind his status as an employee for purposes of determining whether he has minimum contacts with the forum state.  See Calder v. Jones, 465 U.S. 783, 790 (1984);  Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 276-77 (5th Cir. 2006).

and misappropriating information from a Texas company, at least some of which physically came from Texas.

### 2.   Infringement Claims

Plaintiffs have also shown that Killian has contacts with Texas that arise from plaintiffs' infringement claims.   Killian attended the MRO Convention in Texas and met with prospective Texas customers at the convention.   Killian met with these prospective customers at other locations and occasions apart from the Convention, and he provided them with documents to facilitate the approval of Alliance's parts bearing an extra "A" designation by their customer, Texas-based Southwest Airlines.   Killian has also contacted other Texas-based airlines in an effort to sell them additional parts bearing the extra "A" designation.   These contacts relate to plaintiffs' infringement claims.

### 3.   Unfair or Unreasonable

For the same reasons set forth in Part III.A.3, the court finds that exercising jurisdiction over Killian does not offend traditional notions of fair play and substantial justice.

### E.   Blaser

### 1.   Confidential Information Claims

Blaser has sufficient minimum contacts with Texas that arise out of plaintiffs' confidential information claims.   While working for Aerotech, Blaser routinely contacted Aerotech's Texas office by telephone and e-mail, and would visit Aerotech's Texas facility approximately once every six weeks.   While he worked for Aerotech, Blaser received and had access to Aerotech's

confidential information from Aerotech's offices in Texas.   When
Blaser left Aerotech, Blaser retained Aerotech's laptop
containing Aerotech's confidential information, including pricing
information, confidential customer information, market research,
and related information.[10]   Plaintiffs have shown that Blaser
uses this information to target Aerotech's customers, many of
whom are in Texas.   These contacts clearly arise from plaintiffs'
confidential information claims, and Blaser should reasonably
have anticipated being haled into court in Texas for taking
confidential information from a Texas company and then using such
information to target that company's customers, many of whom are
based in Texas.

    2.   <u>Infringement Claims</u>

Similarly, the court finds that Blaser has sufficient
minimum contacts with Texas that relate to plaintiffs'
infringement claims.   Plaintiffs have shown that Blaser attended
the MRO Convention in Texas and met with potential Texas
customers.   Blaser has routinely and repeatedly sold parts with
the extra "A" designation to Texas-based airlines, and has
contacted at least one Texas-based airline in an effort to sell
parts with the extra "A" designation that are currently provided
to that airline by Aerotech.   Blaser met with representatives of
a Texas company in an effort to sell parts with the extra "A"

---

[10]As mentioned in Part III.A.1., while Blaser's declaration denies using or taking any of Aerotech's proprietary information, it is clear from his declaration that Blaser is referring only to technical information pertaining to Aerotech's parts.

designation, and Blaser knew that the company would in turn sell the parts to Texas-based Southwest Airlines.  Blaser also sold parts with the extra "A" designation to another Texas company and has made arrangements to buy back the parts, currently sitting in Fort Worth, Texas, from that company in the future.  Taking the evidence, and the reasonable inferences therefrom, in a light most favorable to plaintiffs, the court finds that Blaser has sufficient minimum contacts with Texas that relate to plaintiffs' infringement claims.

   3.   Unfair or Unreasonable

   For the same reasons set forth in Part III.A.3, the court finds that exercising jurisdiction over Blaser does not offend traditional notions of fair play and substantial justice.

F.   Moyano

   The court concludes that plaintiffs have failed to show that Moyano has minimum contacts with Texas so as to support personal jurisdiction over him in this action.  The court cannot exercise jurisdiction over Moyano solely on the basis that he is a director for Alliance and JCM.  See Stuart v. Spademan, 772 F.2d 1185, 1197 (5th Cir. 1985).  Further, plaintiffs' conspiracy allegations are insufficient to confer jurisdiction over Moyano. See Guidry, 188 F.3d at 625.

IV.

Order

   For the reasons discussed above, the court concludes that defendants' motion should be granted as to JCM and Moyano, and

15

should be denied as to all other defendants.   Therefore,

The court ORDERS that defendants' motion be, and is hereby, granted as to JCM and Moyano, and otherwise be, and is hereby, denied.

The court further ORDERS that all claims and causes of action against JCM and Moyano be, and are hereby, dismissed for lack of personal jurisdiction.

SIGNED August 17, 2009.

JOHN McBRYDE
United States District Judge

16